Thank you, your honors. Juan Rocha on behalf of Appellant Aguilar-Reyes, I'd like to save two minutes for a rebuttal. You may do so, just watch the clock. What on earth does human smuggling mean in Arizona? That's what Judge Silver asked the parties when this case was before the district court in 2010. Well, we know what the federal definition of alien smuggling is, and that requires that the person be illegally in the country, that the person either knowingly or in reckless disregard know the person is in the country illegally, and that the offense must be done in furtherance of such violation of law. Well, I think the government concedes, doesn't it? It concedes the issue with respect to in furtherance of such violation of law, your honor, but it doesn't concede the second issue, which we also raised with respect to the mens rea issue. As I said, the federal definition requires specific intent or recklessness. And your concern is that if we remand Judge Silver, we'll once again apply the definition of mens rea that she did this time? That's correct, Judge Hurwitz, because the court implored this court to decide the issue. It's in the record where she makes several comments that she says, I do find it compelling because I expect this issue will occur again. She wanted a dispositive determination. And then she also says, and I quote, It has always been problematic since they started prosecuting them in the manner it means that they have been. So this issue is right. It's the issue of first impression. And it's why that was the issue that district court decided, the mens rea issue. It didn't decide the in furtherance of such violation. And so we expect or we could expect that if the court doesn't decide the second issue, Judge Silver would then once again, because that's no guidance from the court, do the same. Let me ask you, assuming you're successful and you will be successful at least on partially whatever happens because the government concedes it, what relief are you seeking? Your Honor, we're asking the court to remand this case for resentencing. And the government cites the Plancarte case, but we don't think that case actually is relevant or the rule is applicable to this case. But your client is not even in the United States. That's correct, Your Honor. There's no indication he'll ever come back. Well, Your Honor, the government even, the government can always parole the appellant defendant into the country. They can do that. Are you representing that your client intends to come back to the United States? No, Your Honor. That's why I said that they could parole him in to have him finish his sentence or have him resentenced. But I also must say. Wait a minute. Hold on. How can the government do that if he's outside the United States and we're not talking extradition here? Your Honor, I believe the government, even at the sentencing, said that, or I'm sorry, in their briefs, I think it was on page 1, they said Mr. Aguilar could always be paroled into the country. But don't our cases suggest that in a circumstance like this, we affirm without prejudice and if your client ever returns to the country, then we will have had a decision on the books that instructs the district judge what to do with the sentence? Your Honor, well, I want to say two things to that. One, Aguilar Reyes 1, which was decided in 2011, was a case in which this Court reinstated the original sentence. Mr. Aguilar was given eight months and then he was reinstated the sentence to 33 months. And there he wasn't even present. So as far as he knows, he has an eight-month sentence, not a 33-month sentence. Well, let's walk through this for a second. Your client has a constitutional right to be present at sentencing. Yes. Has he waived that right? No, he hasn't, Your Honor. Okay. So the first time through, he was present at sentencing, received a sentence, and it was later reinstated on appeal, correct? That's correct. Now you want him to be resentenced. How can he be resentenced without being there? Well, Your Honor, as we said in our briefs, this would be a legal issue under Rule 43. It's just simply a legal issue. It had nothing to do with factual issues. And that's why we think the Aguilar Reyes case that was decided in 2011 provides support for that. But that's why I'm having to – you still need to help me. I'm having difficulty with this. Your client has a constitutional right to be present at sentencing. He's going to be resentenced one way or the other. We may reach both issues. We may not reach both issues. You declined to waive his constitutional right to be present. How can he be resentenced? Well, again, I think the Plancarte case doesn't go to the issue of whether – Well, I'm less worried about what cases go into what issues. Tell me how he can be resentenced in absentia. Well, again, under Rule 43, we're arguing that this is simply a legal issue. And Rule 43 allows that. Okay. It's a legal issue, but is there a case or controversy? If your client has no intention of coming back, why should we reach it? Well, Your Honor, again, because the defendant – if this is a – if this Court determines that the underlying offense is in a legal sense, is an illegal enhancement, then the Court should remand it to the district court and have the court decide that legal issue. And if the defendant does come back, if he does come back, he won't spend a substantial amount of prison time waiting to litigate the issue. Well, we can decide – let's assume we decide the issue. Let's assume we say the sentence is illegal and that he shouldn't have been given this enhancement. And then we then affirm without prejudice, so if he ever returns to the country, the district judge may resentence him. Why is he – why isn't that the correct solution? Well, Your Honor, again, because if he – if he did come back, if he did come back, then he would spend a substantial amount of prison time as a result of the – Well, what he – he would have a prison sentence in any event, correct? Yes. It just wouldn't be an enhanced one. When he – when he returned, his able lawyer, you, would run up to C.J. Silver and say, he's back, and the Ninth Circuit told you you were – you have to resentence him, and she would. Why isn't that the appropriate procedure? If this Court were to decide in his favor but affirm the sentence, is that – is that Without prejudice. Without prejudice to you, you seeking resentencing if and when he returns to the United States? I think our position is that, again, it's an illegal sentence. If this Court determines that the enhancement is broader than the generic definition, it's an illegal sentence and it should not stand, Your Honor. What's wrong with Plen carte alvarez? That's the model case that we're following here on the idea of affirming without prejudice. Yes. What's wrong with that case? Well, Your Honor, that was a case in which, as the parties have briefed, in which the government – the defendant there had a lower sentence, and then he had been deported, and then the government won on appeal having to do with the sentencing guideline issue. That was a case in which the defendant got more time, and so there was – but there hasn't been a case in which the defendant – the government cites unpublished cases in which the defendant wins the case and they apply the Plen carte rule. There are unpublished cases, but those cases are not – we don't believe have anything to do with the fact that the holding – the holding shouldn't apply. First, they don't have any precedential value. And number two, the issue in those cases were factual issues. Whether or not there were sufficient facts having to do with the modified categorical tests and the unpublished cases that government cited, here it's a legal issue. It's not anything to do with factual. And we believe that the district court is in the best position to decide that. Let me try this one more time, because I'm still having some difficulty with this. You ask us, and I think you're right, to have your client resentenced without the enhancements. Yes. The district judge will then have to make a decision about the appropriate sentence, will she not? Yes. Your client will not be there. No. Well, I'm sorry, Your Honor. He could be there. Again, the government could parole him in to have a sentence. I know, but if he's there, then we don't have a problem. If he's not there, aren't his constitutional rights violated if she resentences him in his absence? Again, we don't think so, because Rule 43 is simply a legal issue, Your Honor. So, but you're not willing today to waive that right to presence. Well, we certainly could get in contact with him and let him know this was going on, if we could find him or something. So I'd like to reserve my remaining time. You have two minutes. You may reserve. Thank you. We'll hear from the government. Your Honor. Thank you. May it please the Court, Dominic Lanza on behalf of the United States. I want to start by addressing Judge O'Scanlan's question, what's wrong with Plancarte Alvarez? Nothing's wrong with Plancarte Alvarez. It should apply here. Our position, as the Court's noted, is that the sentence should be affirmed without prejudice. And I want to briefly talk about three independent but interrelated reasons why that's the correct. Are you saying that we can't reverse outright? You can. We agree that reversal, in a narrow sense, you should be holding that the sentence is incorrect, but the question is how to implement that remedy. And a reversal outright with instructions to remand to the district court would put the district court in the uncomfortable and undesirable position that the district court found itself in Flores v. Arvizu, which is a case that we cited in our briefs. And so there, neither party in a sentencing appeal by the defendant let this court know that the defendant had already been deported. And as a result, this court remanded with instructions to engage in resentencing, which is the usual remedy. When the district court received the mandate, it said, hey, I can't comply with this mandate legally under Rule 43 because the defendant isn't here. What's uncomfortable about that? And as a result, the district court said, I don't want this case clogging my docket. There's no likelihood. Administratively close it. Do it all the time. The district court in that case vacated the conviction and gave the defendant a windfall in a case where the defendant had pled guilty. Nevertheless, his conviction. So the district court did the wrong thing. They could administratively close it. And this Court affirmed the district court's decision in that case when we appealed in Flores v. Arvizu. And in Flores v. Arvizu, this Court, our office took it to be instructions, firm instructions that in the future, don't let this happen again. Make sure during the direct appeal of the defendant's sentence, you let us know that the defendant has already been deported so we can avoid this whole mess. I've got people on the lam for years, and we just administratively close them. Right. And there are two choices. You could – and the settled practice in this circuit since Plancarte, both in government and defense sentencing appeals, has been nevertheless to affirm without prejudice. I think the Second Circuit and Suleiman, which has adopted the same approach, said the alternative of remanding for a resentencing that can't legally occur is to invite undesirable and mischievous results. And that's what we're asking this Court to avoid here as well. Let me ask you your position on the merits of this case. You concede part of the defendant's argument, but not all of it. Is that a correct reading of your position? We concede that the Arizona smuggling statute is categorically overbroad. Right. Now, with respect to the mens rea requirement of the statute. Yes. Your position is that that mens rea requirement matches up to the Federal mens rea requirement? That's correct. Are you familiar with ARS 13-2929? Yes. Same statute, same – same – Giving it the same conduct. Same title. And it talks about – it talks in terms of recklessness. Correct. Why – if the legislature meant these two to be coexistent, why did it use different language? It's possible they meant them to have different meanings. It's possible they meant them to have different meanings. Isn't that the normal statutory interpretation, canon, that when two statutes in the same title use different words? I think if – I know we give the legislature credit sometimes when we shouldn't, but at least the canon is that they intended, by using different words, to have different meanings. I'm certainly not going to quarrel with the reasonableness of that approach. I would note that I believe different legislatures passed these two statutes. The one that issued our case was passed earlier than 2329. Although it was – it was modified slightly at the time of 2329, wasn't it? Correct. The legislators, again, giving them the statutory canon credit that we do, had it in front of them and decided in the more controversial statute to adopt a different standard of mens rea. Did they not? They did. And I think if the Court were inclined to entertain the merits of this mens rea categorical analysis, that would be one factor that cuts against us. There's a case that we cited at length during the district court proceedings and, in fact, during our opening brief in Aguilar Reyes I, where we briefed the merits of the mens rea issue for about eight pages. There's an Arizona court of appeals decision from 2007. Judge Hall's decision? Correct. The Arizona court of appeals decision, I think, is a case where the reason to know standard that specifically holds negligence is not enough to satisfy the has reason to know standard. With a different statute. With a different statute. Aren't there a couple of Arizona supreme court decisions? Those are really smart guys that go out the other way. Well, they used to be, Judge. I know the defense – I know the defense has cited Mincey as an Arizona supreme court case. That wasn't a case that construed the quantum of evidence necessary to satisfy the reason to know standard. That was a case where the court reversed because the underlying murder statute had a different mens rea requirement, and the trial court erroneously gave an instruction that required has reason to know. Here's my difficulty, because I think we do need to reach this issue, don't we? Because assuming that we don't reach it and Mr. Aguilar Reyes shows up again in the case and Mr. Silver has to resentence him, the law of the case will otherwise be that the mens rea requirement of the statute was satisfied. I don't think the court needs to reach it. I don't – the court could reach it, I want to be clear. It has discretion either way. But in this case, because we've conceded that in furtherance is overbroad, we are going to have to put in judicially noticeable documents to try to prove up the enhancement anyway. And I've – But if the judge starts with the assumption that the mens rea aspect of the case has been settled, as I think she should if we don't reach it, then the nature of the proceeding below will be quite different, won't it? It is not part of the record in this case. Subsequent to the submission of the briefs, we obtained the change of plea transcript, which would be a judicially noticeable document, and we will be submitting it if and when there's ever a resentencing in this case. I am confident that even if this Court were to hold that we forfeited our right to make a categorical mens rea argument in this case based on our failure to brief the merits, we could still prevail under the modified categorical. I suspect you could. The question is whether or not we leave that issue open or whether or not we foreclose it by not reaching it. And it seems to me that by not reaching it, we do foreclose it, don't we? You've – you've foreclosed us from arguing that categorically. No, we foreclosed the defendant from arguing that he – that the mens rea requirement wasn't met, because Judge Silver found that it was. I would be – in light of what I know would be the record on remand, we would be happy in this case for this Court to hold you, the United States, by failing to brief mens rea in your – in your answering brief in this case, have forfeited the right on remand to argue that the mens rea standards are categorical matches. If you'd be happy for us to hold that, I'd be happy to hold it. I think that that would narrow the issues in this case, and I am confident that that would have no effect on our ultimate ability to prove it up in light of what the evidence will be at a resentencing hearing. But to pivot back, that gets to the $64,000 question, should there be a resentencing hearing in this case? The defense has argued that Plancarte Alvarez is distinguishable because it was a government sentencing appeal, but in an unbroken line of decisions since Plancarte was decided, this Court, time and again, without exception, has held that it equally applies to defense sentencing appeals. I acknowledge those were unpublished decisions. They're certainly not binding or precedential on this Court, but I think that they nevertheless can't be ignored. It should be significant that so many of your colleagues have had no trouble finding that Plancarte, the logic of it, applies regardless of who the appealing party is. Why should you have a right on remand to put in what you would claim to be judicially noticeable documents to prove up a mens re that the initial factual statement that was agreed to didn't prove up? Why should you have that right? The Court's traditional practice when there's been a sentencing error is to remand on an open record. Here, and particularly in light of the fact that the defense, this in furtherance was an argument they didn't even raise below, but we've agreed not to enforce forfeiture principles against them because we just want to get to the right result and the truth that a resentencing, the correct procedure should be this Court's usual procedure to remand on an open record. Unless the Court has any further issues or questions, thank you very much. Thank you, counsel. Mr. Rocha, you have some reserved time. Your Honors, we, with respect to the change of plea quality colloquy, we obviously we don't think it's that clear even on the modified court. But it's not, it's not. That's right. But I just want to emphasize that, again, this is an issue of first impression. It's important. Judge Silver implored this Court to decide this issue, and she said it time and time again, and she said it again and again. She even said, I think the Ninth Circuit would decide this case in favor of the defendant. With respect to the Plunkarte issue, again, we emphasize all the cases the government cites with respect where the defendant wins are all unpublished cases. The government says that this Court had no trouble finding that the Plunkarte rule applied in those cases. But again, that Plunkarte has never been applied in a published decision in which the defendant wins. Can you cite a 79th Circuit case in which a sentence was vacated, the defendant was gone? No, Your Honor. And we remanded for resentencing? No, Your Honor. But the closest case I can, at least as far as the reasoning, is the Aguilar-Reyes case I was citing in 2011. They reinstated the sentence, and Mr. Aguilar wasn't even present when that even happened. Granted, it's not a resentencing, but they reinstated the sentence. And as far as he's concerned, he had an 8-month sentence, but now it's a 33-month sentence. So that's as close as I can find where that did happen. Is that an issue somewhere? Is that issue still preserved? No, Your Honor. What's the status of that? This Court remanded the sentence, and there was no district court determination on that. Am I right in that case, the district court sentenced, then vacated the sentence, and then we reinstated it? The Court sentenced and amended. That was the sentence. And then this Court reinstated. So, Your Honor, as I ran out of time, so. Thank you very much, counsel. The case just argued will be submitted for decision.
judges: Piersol, O'scannlain, Hurwitz